On Rehearing
In original opinion we held that plaintiff had established that because of an accident, the vision of his right eye had been so materially impaired as to amount to, for all practical purposes, its loss.
Feeling that the question as to which provision of the Workmen’s Compensation Law applied to the facts of the case, that relating to specific disability (the loss of an eye), or that providing for permanent total disability to do work of any reasonable character, should have further study and consideration, the rehearing was granted, but restricted solely to this question.
The question has been copiously briefed by both sides, and, seemingly, all or nearly all pertinent decisions of our Courts cited in support of the respective contentions.
It is shown, in fact, not questioned, that plaintiff’s left eye is in perfect physical condition. It is also shown, a fact generally recognized, that when the sight of one eye is wholly or nearly destroyed, automatically the power of vision of the other increases. It is also shown, an experience common to all persons who have had the misfortune to lose the power of vision of one eye, that as time passes the inconvenience and reduced ability to see because of absence of sight of the one eye, lessens, and finally the practical effect of the handicap almost entirely disappears. This statement is well supported by experience, and the testimony of physicians that it is not of infrequent occurrence that persons become wholly blind in one eye and the condition will exist for some time before it is discovered.
Describing the handicap arising from impairment of vision of the right eye, plaintiff gave the following rather interesting testimony, to-wit:
“Q. Have you tried driving any since you got your eye injured? A. Nothing more than bringing that load in. I have drove (sic) my car.
“Q. You have a car? A. Yes.
“Q. Have you tried driving it? A. Yes.
“Q. Do you have difficulty driving it? A. Yes.
“Q. What difficulty do you have? A. You have got to keep your head working to see over the bridge of your nose — your nose cuts your sight.
“Q. By ‘keeping your head working’ you mean you have to keep turning your head from one side to the other? In other words, you have to keep rotating your head in order to be able to enlarge your field of vision? A. That’s right.
“Q. Otherwise, when looking straight ahead as was your normal custom when you had two (2) eyes, what effect do you now. find? In other words, tell us just what you see. A. I can look straight ahead like that for a few minutes at a time and it gets to where I can’t see.
“Q. Can you see to your right now? A. Yes.
“Q. When you keep your head straight can you see to the right? A. No, sir, not to the right, I have to—
*38 “Q. You 'have to do what? A. Turn my head.
“Q. Turn your head to the right in-order to see to the right? A. Yes, sir.
“Q. Do you have any other difficulties such as judging distance? A. That’s my worst trouble — in judging distances of oncoming cars and traffic.
“Q. What trouble do you have? A. You just can’t judge distance of them— you are probably meeting a car and it looks like it is a hundred yards from you and it’s a whole lot closer.
“Q. What is the effect of that difficulty in judging distances? Does it slow you down or what? A. Yes, sir, you’ve got to go slow.”
To prove that this testimony is largely untrue, one has only to demonstrate with his own head and eyes. By closing the right eye it is clearly seen that the range of vision is to only a small extent reduced to tire right. The left eye alone, if normal, enables the owner to clearly see all of the highway and road shoulders ahead of him, and objects to his right nearly to the extent that could be done with two good eyes. The bridge of the nose to no degree interferes with seeing to the side, unless such nose is an unusually high one and this is not shown in the -present case. It is also not necessary to continuously rotate the head, as described by plaintiff, in order to envision the same physical conditions that would be revealed by two eyes, unless it is desired to look backward.
Plaintiff plants his asserted right to recover compensation for 400 weeks upon the contention that henceforth he will be unable to operate a truck 'loaded with saw logs. He does not deny that, excepting the impaired vision, he is as physically able to drive trucks now as he was prior to the accident, but does argue, based upon the testimony quoted above, that he is disabled to safely drive any truck. That is not the experience of one-eyed men generally, whose main business is that of driving trucks. He was asked:
“Q. You will admit that you can do any work that a one-eyed man can do? A. Well, anything they can do, I believe I can.”
He admits that he has since the accident applied for employment to only one company and that was to drive a log truck. Pie has not sought other truck driving employment.
Nature, in its wisdom, has provided human beings with organs and members, generally in sets of two. The purpose is obvious: that tire loss of one would not render the owner wholly helpless, but would be left with another to enable him to carry on.
Plaintiff earned a livelihood as operator of trucks. The fact that for several years he confined his work to hauling saw logs but now is unable to secure that sort of employment, as we view the law, does not necessarily warrant classifying him as unable to earn a livelihood by the operation of trucks used in other lines of business. It should be recalled that plaintiff is a robust man, shown to be in perfect physical condition, and only 42 years old.
The operation of trucks and like vehicles requires no special skill. It more properly should be classified as a form of labor, if not hard labor. Persons, white and colored, without any educational foundation or 'special training, become quite proficient therein. They simply “pick it up”. See Blackwell v. Wimberly et al., La.App., 53 So.2d 814.
In the Blackwell case demand for compensation payments was denied to him, who, admittedly, had sustained serious injuries, disabling him for a period to perform work of any character. We said in that case that ability to perform the same work being done when the injury occurred, or work of similar character should be given a liberal construction, to the end that efforts to perpetrate fraud and imposition would be effectiyely frustrated.
A re-study of the record in the case has left us of the same opinion as expressed originally. No good purpose would be promoted by discussing and analyzing the many cases cited by counsel. After all, each case of this sort must be determined from its own peculiar facts.
*39 Therefore, for the assigned reasons, our former decree and opinion herein are reinstated and made the final judgment of this Court